J-A15006-20

2020 PA Super 215

| | | |
|---|---|---|
| 2303 BAINBRIDGE, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STEEL RIVER BUILDING SYSTEMS, | : | No. 2520 EDA 2019 |
| INC. | : | |

Appeal from the Order Entered July 22, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2018-07328,
No. 2018-20172, No. 2019-14058

BEFORE:   LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

OPINION BY LAZARUS, J.:                    **FILED SEPTEMBER 3, 2020**

2303 Bainbridge, LLC (Bainbridge), appeals from the order, entered in the Court of Common Pleas of Montgomery County, (1) denying its motion to recuse; (2) sustaining Appellee Steel River Building Systems, Inc.'s (Steel River) preliminary objections asserting improper venue; (3) consolidating three related cases;[1] and (4) transferring the consolidated cases to Philadelphia County.  After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] On October 23, 2019, this Court issued a rule wherein Bainbridge was directed to show cause why this appeal should not be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). In **Walker**, the Pennsylvania Supreme Court interpreted Pa.R.A.P. 341 and found that "in future cases Rule 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court

docket, separate notices of appeal must be filed.  The failure to do so will result in quashal of the appeal." *Id.* at 977 (footnote omitted).

Rule 341 states that "an appeal may be taken up as of right from any final order of a government unit or trial court."  Pa.R.A.P. 341(a).  The Official Note clarifies that:

> Where [] one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.  *Commonwealth v. C.M.K.*, 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

*Id.*, Official Note.

In *Walker*, our Supreme Court acknowledged that the Official Note to Rule 341 was "contrary to decades of case law." *Walker*, *supra* at 977.  Moreover, the Court stated that the Note's citation to *C.M.K.*, *supra*, "was itself unclear, as that case was arguably not inconsistent with the three-part test in *General Electric* [*Credit Corp. v. Aetna Cas. and Sur. Co.*, 263 A.2d 448 (Pa. 1970).]"

Nevertheless, in *Commonwealth v. Creese*, 216 A.3d 1142 (Pa. Super. 2019), this Court read the *Walker* decision to require quashal if a notice of appeal contains more than one docket number because "a notice of appeal may contain *only one* docket number." *Id.* at 1146 (emphasis added).

Most recently, in *Commonwealth v. Johnson*, 2046 EDA 2019 (Pa. Super. filed July 9, 2020) (en banc), this Court expressly overturned the panel decision in *Creese* to the extent it interpreted *Walker* to require quashal when an appellant files a single notice of appeal listing multiple docket numbers because, "by stating that each notice of appeal may contain only one number, *Creese* imposed upon appellants an additional requirement found in neither *Walker* nor Rule 341." *Johnson*, *supra* at *12.

Here, Bainbridge included all three docket numbers in its single notice of appeal; however, we decline to quash.  In the trial court dockets, the final entries in the two consolidated dockets state, "Disposed by Consolidation" and, in the status entry they state "6-Closed," whereas the lead consolidated docket from which this appeal is taken states "2-Open."  Additionally, we note

This appeal arises from a commercial arbitration in connection with a construction dispute between the parties. Bainbridge filed three petitions, each docketed separately, seeking a declaratory judgment that several of the arbitrator's various awards could not be confirmed by a court, or in the alternative, that the awards should be set aside. As noted above, the court subsequently consolidated the related cases.

On July 10, 2015, the parties entered into a contract wherein Steel River agreed to manufacture, deliver, and set on to the steel frame of a building, twenty-three "modules" that would form individual residential units within a condominium building in Philadelphia. On January 6, 2017, Bainbridge, believing that Steel River was in breach, terminated the contract.[2]

_____

that the concerns present in **Walker** are not present here: there are not multiple defendants, the facts and issues apply only to one appellant, and the outcome will affect only one appellant. **See Commonwealth v. Larkin**, 2761 EDA 2018 (Pa. Super. filed July 9, 2020) (en banc). Thus, we find that **Walker** does not require quashal, and we will proceed to review this appeal on its merits. **See Johnson**, **supra**; **see also Larkin**, **supra**.

[2] By way of additional factual background, Bainbridge believed that Steel River was in breach of the terms of the contract for the following reasons:

[Bainbridge] only terminated the [c]ontract with cause to protect itself and the [p]roject from further harm after and as a result of each of the following:

- Both before the modules were delivered to the [p]roject site and during the course of the setting thereof, [Bainbridge] placed Steel River on notice of serious, material defects in the condition of the modules . . . and the manner in which they were set. [] Substantial and repeated damage to the [p]roject occurred . . . as a result of Steel River's failure to properly

install a . . . weatherproofing [system, which] . . . permitted rain water to infiltrate the building. This problem was exacerbated when Steel River employed unqualified personnel to try to repair the roofing system in a manner contrary to the manufacturer's recommendations[,] using a blow torch to heat seams[.]

- During the course of the setting of the modules . . . [Bainbridge's] general contractor and Steel River conducted a walk-through of the [p]roject. During this walk-through[,] it was acknowledged and agreed by Steel River that a massive amount of work that remained incomplete on the [p]roject was the contractual responsibility of Steel River. [Bainbridge] and its general contractor [] reasonably estimated, however, that the incomplete work would cost exponentially more than the sums remaining due to Steel River[.]

- [Bainbridge] learned that Steel River had failed to pay at least one of its subcontractors, a temporary staffing firm that supplied the majority of Steel River's labor force, over $250,000 despite [Bainbridge] having already paid Steel River specifically on account of the open invoices due to that subcontractor[,] placing the [p]roject at risk of a large mechanic's lien claim. [Bainbridge] was particularly concerned about this issue because [Bainbridge] had recently learned that (contrary to pre-[c]ontract discussions), Steel River maintained only a skeleton labor force, and relied upon temporary staffing firms to supply the labor that would be needed to complete its massive remaining scope of work. The staffing firm was threatening to walk off of the job, which would have foreclosed Steel River's ability to complete the [p]roject.

[Subsequently, Steel River] claimed that pilot houses and clerestories that had always been within [Steel River's] scope of work were suddenly not, and proposed an approximately $340,000 change order to complete this aspect of its existing scope of work on the [p]roject, which amount was [four to five] times greater than what [Bainbridge's] general contractor advised was the reasonable cost thereof[.] Thus, [Bainbridge], as was its contractual right, rejected the change order.

Appellant's Brief, at 10-12.

Following termination, the parties unsuccessfully attempted to mediate the dispute. Bainbridge then initiated arbitration by filing a complaint. Steel River filed an answer and counterclaim. The arbitration took place over the course of multiple hearings, all of which occurred in Philadelphia at the offices of Duane Morris LLP. Prior to the conclusion of the arbitration, on Steel River's motion, the arbitrator entered a "Reasoned Interim Award" in favor of Steel River. Steel River then filed a petition in the Court of Common Pleas of Philadelphia County seeking a court-ordered confirmation of the award. The Philadelphia County court denied Steel River's petition to confirm, without providing a reason for the denial.[3] *See* Order, 12/28/17.

Steel River subsequently filed a motion before the arbitrator seeking a modification of the Reasoned Interim Award. The arbitrator granted the motion and issued a "Modified Interim Arbitration Award" on March 15, 2018, which stated that the award "shall be enforceable as a final award," that the arbitrator no longer "retain[ed] the power" to enforce the award, and that the order disposed of all issues pertaining to Steel River's request for interim relief. *See* Modified Award Granting Respondent's Motion for Interim Measures, 3/15/18, at 6. Bainbridge, in seeking to preempt Steel River from petitioning the court to confirm the Modified Interim Arbitration Award, filed

_____

[3] Although the court did not provide a reason for its denial, the parties agree that it was because "the Reasoned Interim Award was expressly subject to modification, [therefore] it was not a final award eligible for judicial confirmation. *See Fastuca v. L.W. Molinar & Assocs.*, 10 A.3d 1230 (Pa. 2011)." Trial Court Opinion, 10/30/19, at 2-3.

its own petition in the Court of Common Pleas of Montgomery County, seeking a declaratory judgment that the award was not confirmable. On Bainbridge's motion, the court administrator for the Court of Common Pleas of Montgomery County issued a rule directing Steel River to "show cause why the moving party is not entitled to the relief requested by filing an answer in the form of a written response . . . on or before [May 29, 2018.]" **See** Rule to Show Cause, 4/25/18. On May 29, 2018, at 5:55 p.m., Steel River filed its answer and, at 6:10 p.m., filed its preliminary objections asserting improper venue based upon the Pennsylvania Arbitration Act's venue provision. **See** 42 Pa.C.S.A. § 7319.

Following the conclusion of the arbitration, the arbitrator issued a "Partial Final Award" on July 13, 2018. Bainbridge filed a second petition in the Court of Common Pleas of Montgomery County seeking a declaratory judgment that the Partial Final Award was not a confirmable award, or in the alternative, seeking to have it set aside. Steel River did not file anything in response to this declaratory judgment petition. Instead, Steel River petitioned the Court of Common Pleas of Philadelphia County to confirm the Partial Final Award. That petition was stayed pending resolution of the petitions in the Court of Common Pleas of Montgomery County. **See** Order, 4/15/19.

On April 24, 2019, the arbitrator entered an award titled "Final Award of Arbitrator as to Attorney's Fees and Costs," on Steel River's fee application, which resolved all matters before him. On May 24, 2019, Bainbridge filed a

petition to set aside the award, and shortly thereafter, moved to consolidate the three cases, as mentioned above.

Bainbridge's first petition for declaratory relief and its motion to consolidate were assigned to the Honorable Jeffrey S. Saltz of the Montgomery County Court of Common Pleas. On May 1, 2019, Judge Saltz wrote to the parties to disclose a "professional acquaintance" he had with the arbitrator in the instant case, Richard H. Lowe, Esquire.[4] Judge Saltz invited a motion to recuse from the parties, which Bainbridge filed.

_____

[4] The letter stated:

> Dear Counsel:
>
> In this matter, which has been assigned to me, [Bainbridge] seeks to set aside a "[M]odified [I]nterim Arbitration Award" issued by Richard H. Lowe, Arbitrator. I assume that this is the same Richard H. Lowe who is a member of the firm of Duane Morris LLP. If my assumption is incorrect, please notify me immediately.
>
> I am writing to disclose that I have a professional acquaintance with Mr. Lowe. I came to know him while we were colleagues for approximately two years at the firm of Wolf, Block, Schorr and Solis-Cohen. After Mr. Lowe left Wolf, Block, we were counsel for different parties in a case (the details of which I do not recall). We also have had casual conversations during some chance encounters. We have not seen each other socially.
>
> At first blush, I do not believe that the above facts prevent me from participating in this matter, but I will consider any objections to my participation that any party may have. Any such objections should be submitted in writing to Chambers within ten days of the day of this letter[.]

Letter from Chambers of the Honorable Jeffrey S. Saltz, 5/1/19.

On July 15, 2019, the court held oral arguments on the limited issues of recusal, venue, and consolidation of the three cases. Judge Saltz entered the above order on July 22, 2019. Bainbridge timely appealed. Bainbridge and the trial court subsequently complied with Pa.R.A.P. 1925.

On appeal, Bainbridge presents the following issues for our review, which we have renumbered for ease of disposition:

1. Did the [t]rial [c]ourt err in finding that the Pennsylvania Arbitration Act was applicable to and was controlling with respect to the question of venue where the [f]irst [p]etition for [d]eclaratory [r]elief sought declaratory relief that a non-final, and thus non-confirmable, arbitration decision was not an "award" as such term is used in 42 Pa.C.S.A. [§] 7341 as determined by the Pennsylvania Supreme Court in **Fastuca v. L. W. Molinar & Assocs.**, [] [10 A.3d 1230] ([Pa.] 2011), rather than to set [the] same aside, and thus was not actually a petition under the Pennsylvania Arbitration Act subject to its venue provision?

2. To the extent this [] Court concludes that the Pennsylvania Arbitration Act is applicable, did the [t]rial [c]ourt err in concluding that 42 Pa.C.S.A. [§] 7319(1) is the applicable venue subsection over 42 Pa.C.S.A. [§] 7319(2)?

3. Did the [t]rial [c]ourt err in considering [Steel River's] preliminary objections to [Bainbridge's] [f]irst [p]etition for [d]eclaratory [r]elief where [Steel River] first filed an answer to the petition, and then later filed preliminary objections to venue, despite having already waived its right to object challenging venue as being improper by virtue of its answer?

4. Did the [t]rial [c]ourt err in failing to recuse itself from this matter where the integrity of arbitrator Richard H. Lowe went to the heart of the matter before the [c]ourt, and implicit bias in favor of [] Lowe could have subconsciously impacted the [t]rial [c]ourt's ruling to transfer venue as a means of avoiding that issue[?]

Appellant's Brief, at 5-6.

- 8 -

Bainbridge first claims that the court erred in determining that section 7319 was the applicable venue statute. Bainbridge reasons that its petition was a "petition for declaratory relief" rather than "an application to a court" under section 7319(1). Appellant's Brief, at 29. Bainbridge's reading of section 7319 would hold that it only applies "if the hearing has been held," and that because the arbitration proceedings were not yet complete at the time Bainbridge filed its petition, the hearing had not yet "been held." **See id.** at 32. Therefore, Bainbridge concludes, its petition should be governed by the general venue provisions of Pa.R.C.P. 1006 and Pa.R.C.P. 2179. **Id.** In the alternative, Bainbridge claims that because the hearing had not yet been held, venue was proper under section 7319(2), rather than section 7319(1), since "Steel River's principal place of business was [] in Pottstown, Montgomery County[.]" **Id.**

Our standard of review for a trial court's decision to transfer venue is well-settled:

> A trial court's decision to transfer venue will not be disturbed absent an abuse of discretion. An abuse of discretion occurs when the trial judge overrides or misapplies the law, or exercises judgment in a manifestly unreasonable manner, or renders a decision based on partiality, prejudice, bias or ill-will.

**Baylson v. Genetics & IVF Inst.**, 110 A.3d 187 (Pa. Super. 2015) (quoting **Sehl v. Neff**, 26 A.3d 1130, 1132 (Pa. Super. 2011)). In cases involving statutory interpretation, which is a matter of law, our standard of review is *de novo* and our scope of review is plenary. **Harmon v. Unemployment Comp. Bd. Of Review**, 207 A.3d 292, 298 (Pa. 2019).

> When construing [provisions] utilized by the General Assembly in a statute, our primary goal is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.[A.] § 1921(a). "Every statute shall be construed, if possible, to give effect to all its provisions." *Id.* However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). "Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage." *Id.* § 1903(a). In other words, if a term is clear and unambiguous, we are prohibited from assigning a meaning to that term that differs from its common everyday usage for the purpose of effectuating the legislature's intent. Additionally, we must remain mindful that the "General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1).

*Commonwealth v. Cahill*, 95 A.3d 298, 301 (Pa. Super. 2014). It is axiomatic that the plain language of a statute is the best indication of the legislative intent that gave rise to the statute.

> Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa.C.S.[A.] § 1903(a).

*Commonwealth v. Giordano*, 121 A.3d 998, 1003-04 (Pa. Super. 2015)

(quoting *Commonwealth v. Ali*, 112 A.3d 1210, 1229 (Pa. Super. 2015)).

In its Rule 1925(a) opinion, the trial court addressed the issue of venue

as follows:

> The Uniform Arbitration Act ("the Act"), 42 Pa.C.S.[A.] §§ 7301-7320, recognizes both "statutory arbitration" and "common law arbitration." "Statutory arbitration" is an arbitration pursuant to a written agreement that expressly provides for arbitration pursuant to the Act. 42 Pa.C.S.[A.] § 7302(a). Any other non-

- 10 -

judicial arbitration is deemed a "common law arbitration." ***Id.*** Since the contractual arbitration provision in the present case does not expressly refer to the Act, it is considered a common law arbitration. Common law arbitrations are governed by 42 Pa.C.S.[A.] §§ 7341[-]42. Section 7341 provides for the limited grounds on which the award of an arbitrator may be challenged. Section 7342 provides that certain procedural provisions of the Act, relating to statutory arbitrations, shall apply as well to common law arbitrations.[2] In particular, section 7342 provides that "[s]ection 7319 (relating to venue of court proceedings)" shall apply to common law arbitrations.

> [2] [In 2018,] the General Assembly enacted Act No. 2018-55, which added the Revised Statutory Arbitration Act ("the Revised Act"), 42 Pa.C.S.[A.] §§ 7321.1-.31. The Revised Act applies only to an arbitration agreement made after the effective date, July 1, 2019, and it therefore does not apply to the present arbitration. The same legislation amended section 7342 to provide that certain procedural sections of the Revised Act (rather than the original Act) shall apply to common law arbitrations; however, those amendments do not apply to "an action or proceeding commenced or right accrued before the effective date" of the legislation. Act of June 28, 2018, No 2018-55, § 4(3). Accordingly, all references herein to section 7342 are to the version in effect prior to Act No. 2018-55.

Section 7319 provides:

> Except as otherwise prescribed by general rules:
>
> (1) An initial application to a court under this subchapter shall be made to the court of the county in which the agreement prescribes that the arbitration hearing shall be held or, if the hearing has been held, in the county in which the hearing was held.
>
> (2) If an application to a court cannot be made under paragraph (1) the application shall be made to the court in the county where the adverse party resides or has a place of business or, if he has no residence or place of business in this Commonwealth, to the court of any county.
>
> (3) All subsequent applications to a court shall be made to the court hearing the initial application unless that court otherwise directs.

- 11 -

[42 Pa.C.S.A. § 7319.]

Before this [c]ourt, Steel River asserted that the matter is governed by section 7319(3), because it previously filed a petition, seeking confirmation of the Reasoned Interim Award, in the Philadelphia [c]ourt. Thus, it argued, any "subsequent applications" must be filed in the same [c]ourt. [] Bainbridge responded that the Philadelphia [c]ourt determined that Steel River's prior petition was premature, and it therefore should not control under section 7319(3). It is unnecessary to resolve this issue. If [] Bainbridge is correct that paragraph (3) does not apply, then venue is controlled by section 7319(1). Although the parties' arbitration agreement does not specify a location for the arbitration hearing, the hearings in this matter were held in Philadelphia. Therefore, under [a straightforward application of section 7319(1)], [Bainbridge's p]etitions [] should have been filed in Philadelphia, "the county in which the hearing was held." []

Trial Court Opinion, 10/30/19, at 6-7.

As an initial matter, Bainbridge claims that its filing seeking declaratory relief was not actually a petition, but was an action seeking such relief. ***See*** Appellant's Brief, at 6-7. This Court has previously stated that "[t]o challenge an arbitration award, the proper procedure requires the filing of a timely petition, alternatively called an 'appeal,' with the [c]ourt of [c]ommon [p]leas, to vacate or modify the arbitration award. **The statute does not provide for any alternative procedure, such as a [d]eclaratory [j]udgment action**[.]" ***Lowther v. Roxborough Mem'l Hosp.***, 738 A.2d 480, 485 (Pa. Super. 1999) (emphasis added). Indeed, despite Bainbridge's attempt to recast the petitions to set aside as declaratory judgement actions, Bainbridge's filing in the Montgomery County court was titled "Petition to Set Aside Interim Arbitration Award" and was purportedly filed "pursuant to 42

Pa.C.S.A. [§] 7341," in addition to seeking declaratory relief.[5]  ***See*** Petition to

Set Aside Interim Arbitration Award, 4/13/18, at 1.

Here, the trial court applied the plain language of section 7319(1), and

found it applicable to Bainbridge's petition because multiple arbitration

hearings—though not all—had taken place, and all had been held in

Philadelphia.  On the issue of whether completion of all hearings is necessary

for section 7319(1) to apply, the trial court noted that:

> The statutory language does not support [] Bainbridge's reading
> that where an arbitration encompasses multiple hearings, all of
> the hearings must be concluded before the venue provision of
> section 7319(1) applies. [] Bainbridge presents no plausible
> purpose that the Legislature might have had in enacting a statute
> that, under [] Bainbridge's interpretation, would specify the venue
> of judicial proceedings when all arbitration hearings are final and
> concluded, but would be wholly indifferent to venue when some
> hearings have been held but other aspects of the arbitration
> remain to be completed.[3]
>
>> [3] It is of no consequence that paragraph (1) refers to "the
>> hearing" in the singular.  Under the Statutory Construction
>> Act of 1972, "[t]he singular shall include the plural, and the
>> plural, the singular."  1 Pa.C.S.[A.] § 1902.

Trial Court Opinion, 10/30/19, at 7-8.

We agree with the trial court's reasoning.  The court correctly pointed

out that, under section 1902 of the Statutory Construction Act, the language

of section 7319(1) should be read in its inclusionary form: "[a]n initial

application  .  .  .  shall be made to the court of the county in which the

---

[5] We note that by following the appropriate procedure set out in ***Lowther***, ***supra***, Bainbridge is able to challenge whether the arbitrator's award can be confirmed, which is the same claim Bainbridge seeks to raise in its declaratory judgment action.

agreement prescribes that the arbitration hearing[(s)] shall be held, or if the hearing[(s)] has[/have] been held, in the county in which the hearing[(s)] was[/were] held." **See** 42 Pa.C.S.A. § 7319(1). If the Legislature had intended Bainbridge's reading, it could have substituted the word "held" for "completed." Thus, we conclude, by the plain meaning of the statute, section 7319 is applicable to situations in which some, but not all, hearings have been held.

Here, because multiple hearings were held in Philadelphia prior to Bainbridge's filing of its petition in the Court of Common Pleas of Montgomery County, and because, by the plain meaning of the statute, completion of **all** hearings is **not** required for the application of section 7319(1), the trial court did not abuse its discretion in determining that venue was proper in Philadelphia. **See Baylson**, **supra**.

In its second issue on appeal, Bainbridge argues that section 7319(2) is the applicable section of the Act in this situation, rather than section 7319(1). **See** Appellant's Brief, at 33-34. We disagree, and find that the same plain reading of the statute, as described above, answers this question as well. We discern no reason why Bainbridge's application "cannot be made under paragraph (1)[.]" **See** 42 Pa.C.S.A. § 7319(2). Therefore, there was no abuse of discretion. **See Baylson**, **supra**.

In its third issue, Bainbridge argues that Steel River waived its objection to venue because it filed its answer fifteen minutes before it filed its preliminary objections. **See** Appellant's Brief, at 24-27. Steel River claims

that it made the filings in response to the trial court's rule to show cause, which directed it to respond by "filing an answer[.]" **See** Appellee's Brief, at 9-10. Further, Steel River argues that it filed both preliminary objections and an answer with new matter on the same day and only minutes apart. **Id.** We agree with Steel River and decline to find waiver.

We have previously held that a party's error is excusable when it is the result of a "breakdown in the court's operations." **See Commonwealth v. Stansbury**, 219 A.3d 157, 160 (Pa. Super. 2019). In **Stansbury**, we declined to quash an appeal when a *pro se* defendant filed a single notice of appeal listing two docket numbers, which was then contrary to the permitted procedure, pursuant to **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019).[6] In **Stansbury**, the trial court advised the defendant "that he has thirty days from this day, to file '**a** written notice of appeal to the Superior Court.'" **Id.** at 159 (emphasis in original). This amounted to a "misstatement" of the law because the defendant's case arose under two docket numbers. **Id.** at 160. Therefore, at that time, pursuant to **Creese**, defendant was required to file two separate notices of appeal. Failure to do so ordinarily mandated quashal. Due to this "breakdown in court operations," however, the **Stansbury** court "overlook[ed] the defective nature of [the] Appellant's [] notice of appeal[.]" **Id.**

---

[6] As noted in footnote 1, above, the rule mandating quashal, as stated in **Creese**, was overruled in **Commonwealth v. Johnson**, 2046 EDA 2019 (Pa. Super. filed July 9, 2020) (en banc).

- 15 -

Here, Steel River was instructed by the trial court, via the rule to show cause, to respond by "filing **an answer**[.]" *See* Rule to Show Cause, 4/25/18 (emphasis added). We find that this instruction misled Steel River and amounted to a breakdown in court operations. *See Stansbury*, *supra*. Because Steel River filed both the preliminary objections and the answer with new matter at about the same time, and both documents reference the issue of improper venue, under these circumstances, we decline to elevate form over substance. Thus, Steel River's objection to venue was not waived. *See Fischer v. UPMC Northwest*, 34 A.3d 115, 120 (Pa. Super. 2011) (party error excusable, and appellate rights can be reinstated *nunc pro tunc*, when resulting from "breakdown in [] court's operations," which includes party being unintentionally misled by court or an administrative board); *see also Flynn v. Unemployment Comp. Bd. of Review*, 159 A.2d 579, 581 (Pa. Super. 1960) ("Where a claimant is unintentionally misled by an official who is authorized to act in the premises, the time may also be extended when it is possible to relieve an innocent party of injury consequent of such misleading act.").

Finally, Bainbridge claims that Judge Saltz erred by failing to recuse himself. Specifically, Bainbridge argues that "given the highly sensitive nature of the issues before the bench, [Bainbridge] reasonably believes it to be impossible for implicit bias not to color [Judge Saltz's] election to consider [the] venue issue without first recusing himself as a means of avoiding the more difficult recusal question." Appellant's Brief, at 36. In making its

argument for recusal, Bainbridge relies only upon: (1) the substance of Judge Saltz's letter to the parties; and (2) Bainbridge's claim that the arbitrator was biased, and thus, Judge Saltz is unable to impartially weigh the case because of his prior relationship with the arbitrator.[7] ***See*** Bainbridge's Motion to Recuse, 6/3/19, at 8-9. We disagree.

Our deferential standard of review for a denial of a recusal demand is well-settled:

_____

[7] Bainbridge's motion to recuse, in twenty-six numbered paragraphs, primarily set forth arguments that the *arbitrator* was unfairly biased in favor of Steel River. ***See*** Bainbridge's Motion to Recuse, 6/3/19. With regard to Judge Saltz's ability to hear the case impartially, Bainbridge's motion to recuse stated in relevant part:

> 19. In a letter dated May 1, 2019, [Judge Saltz] advised the parties that [he] and Mr. Lowe were once colleagues at the same law firm for a few years; were later involved in a lawsuit in which they represented differen[t] parties; and have maintained a casual acquaintance through the present date. As a result, the [c]ourt invited the parties to object to [Judge Saltz's] continued participation in the case, ultimately ordering any party wishing to move for recusal to do so by June 3, 2019.
>
> \* \* \*
>
> 24. Here, given [Judge Saltz's] lengthy past relationship with Mr. Lowe, [Judge Saltz] has likely already developed opinions with respect to Mr. Lowe's character.
>
> 25. Accordingly, because Mr. Lowe's credibility and character are a material issue for determination, it is respectfully submitted that [Judge Saltz's] likely existing opinions on Mr. Lowe's character, whether positive or negative, could affect the [c]ourt's consideration of the [p]ending [p]etition, and thus create an appearance of impropriety.

***Id.*** at 8-9.

- 17 -

> Our Supreme Court presumes judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.

***Commonwealth v. Kearney***, 92 A.3d 51, 60 (Pa. Super. 2014) (quoting

***Commonwealth v. Druce***, 848 A.2d 104, 108 (Pa. 2004)) (internal citations,

quotation marks, and brackets omitted).

> As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion.

***Id.*** (quoting ***Commonwealth v. Abu-Jamal***, 720 A.2d 79, 89 (Pa. 1998)).

"When a judge believes his impartiality can be reasonably questioned, he

should recuse himself, just as he should if he himself has doubt as to his ability

to preside impartially." ***In Interest of Morrow***, 583 A.2d 816, 819 (Pa.

Super. 1990) (citing ***Commonwealth v. Goodman***, 311 A.2d 652, 654 (Pa.

1973)) (internal quotation marks omitted).

Bainbridge cites to Rules 1.2 and 2.11 of the Code of Judicial Conduct

in support of its claim that Judge Saltz should have recused himself. ***See***

Appellant's Brief, at 35-36. We have previously found that an appellant's reliance on the Code of Judicial Conduct is "misplaced" when arguing that the trial judge erred in failing to recuse. *See Kearney*, *supra* at 62-63.

> [E]nforcement of the Code of Judicial Conduct is beyond the jurisdiction of [the Superior] Court. *See Reilly v. Southeastern Pennsylvania Transp. Auth.*, 489 A.2d 1291, 1298 (Pa. 1985), *overruled on other grounds as recognized by Gallagher v. Harleysville Mut. Ins. Co.*, 617 A.2d 790, 794 (Pa. Super. 1992). Our Supreme Court explained:
>
>> In furtherance of our exclusive right to supervise the conduct of all courts and officers of the judicial branch of government pursuant to Article V, Section 10(c) of our Constitution, we have adopted rules of judicial conduct for ourselves and all members of the judicial branch. [] The enforcement of those rules, however, is beyond the jurisdiction of the Superior Court and to the extent that it has attempted to interpret Canon 3 C, by creating new standards of review on recusal motions, procedures for raising recusal questions, or for enforcement of violations of the Code, they are without effect, as unwarranted intrusions upon this Court's exclusive right to supervise the conduct of all courts and officers of the judicial branch.
>
> *Reilly*, *supra* at 1298 (footnote omitted). The Supreme Court added:
>
>> Canon 3 C, like the whole of the Code of Judicial Conduct, does not have the force of substantive law, but imposes standards of conduct upon the judiciary to be referred to by a **judge** in his **self-assessment** of whether he should volunteer to recuse from a matter pending before him. The rules do not give standing to others, including [the] Superior Court, to seek compliance or enforcement of the Code because its provisions merely set a norm of conduct for all our judges and do not impose substantive legal duties on them.
>
> *Id.* (emphasis in original).

*Id.*  Bainbridge offers no other support for why the trial court erred with regard to recusal.   Moreover, our independent review of the record offers no support for Bainbridge's position; Judge Saltz and Mr. Lowe's prior relationship is limited to "professional acquaintances" and "chance encounters."  ***See*** Letter from Chambers of the Honorable Jeffrey S. Saltz, 5/1/19.   This relationship does not "create an appearance of impropriety."  ***See*** Bainbridge's Motion to Recuse, 6/3/19, at 9.   Moreover, it does not reasonably call into question Judge Saltz's impartiality.  ***See In Interest of Morrow***, ***supra***.   Therefore, the trial judge did not abuse his discretion in declining to recuse.  ***See Kearney***, ***supra*** at 60.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/3/2020</u>