J-S45010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HYKEEM HALE | : | |
| | : | |
| Appellant | : | No. 1939 EDA 2021 |

Appeal from the Judgment of Sentence Entered May 27, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008869-2019

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.: **FILED APRIL 12, 2023**

Appellant, Hykeem Hale, appeals from the May 27, 2021 judgment of sentence that imposed an aggregate sentence of 8 to 20 years' incarceration. Appellant's sentence was imposed after a jury found Appellant guilty of aggravated assault, firearms not to be carried without a license, as well as carrying firearms on public streets or public property in Philadelphia, Pennsylvania and after the court, at the conclusion of a waiver trial, found Appellant guilty of persons not to possess, use, manufacture, control, sell, or transfer firearms.[1] We affirm Appellant's judgment of sentence, as modified, in accordance with this memorandum.

The record reveals that, on March 31, 2021, a jury found Appellant guilty of aggravated assault, firearms not to be carried without a license, and

_____

[1] 18 Pa.C.S.A. § 2702(a), 6106(a)(1), 6108, and 6105(a)(1), respectively.

carrying a firearm on public streets or public property in Philadelphia. N.T., 3/31/21, at 109-110. After the verdict was recorded and the jury was dismissed by the trial court, the Commonwealth raised, with the trial court, the pending charge of persons not to possess a firearm, which the Commonwealth described as having been bifurcated from the three aforementioned charges that were submitted to the jury.[2] *Id.* at 111. The Commonwealth stated that it was "willing to go forward with [this charge] as a waiver trial[.]" *Id.* at 112. An on-the-record colloquy of Appellant ensued and, ultimately, Appellant waived his right to a jury trial and proceeded to a stipulated waiver trial. *Id.* at 114-120. Thereafter, the trial court found Appellant guilty of persons not to possess a firearm. *Id.* at 121.

On May 27, 2021, Appellant was sentenced to 8 to 20 years' incarceration for aggravated assault; 3½ to 7 years' incarceration for firearms not to be carried without a license; 2 to 4 years' incarceration for carrying a firearm on public streets or public property in Philadelphia, and 8 to 20 years' incarceration for persons not to possess a firearm. *Id.* at 15; *see also* Sentencing Order, 5/27/21. All sentences were set to run concurrently for an aggregate sentence of 8 to 20 years' incarceration. N.T., 5/27/21, at 15; *see also* Sentencing Order, 5/27/21.

---

[2] A trial court order bifurcating the aforementioned charge does not appear as part of the certified record.

On June 6, 2021, Appellant filed a post-sentence motion requesting reconsideration of his sentence. On August 25, 2021, Appellant filed a supplemental post-sentence motion for reconsideration of his sentence. On September 22, 2021, the trial court denied Appellant's post-sentence motion. This appeal followed.[3]

Appellant raises the following issues for our review:

[1.] Did the [trial] court err when it permitted evidence in the form of the drug-crime related qualities of the area where the incident occurred and the telephone communications of [Appellant] while he was in pre-trial incarceration?

[2.] Did the [trial] court err by failing to disclose prior to trial its intimate familiarity with the area where the incident occurred, and further, based its sentencing on the same familiarity?

[3.] Did the [trial c]ourt error in sentencing [Appellant] to jail where it promised [Appellant] on the record a sentence of "no further penalty" in exchange for [Appellant's] waiver of his fundamental right to a jury trial?

Appellant's Brief at 4-5.

Appellant's first issue challenges the admissibility of evidence, a claim we examine under a well-settled standard of review.

Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment[ but, rather, is] the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,]

---

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted), *appeal denied*, 244 A.3d 1222 (Pa. 2021).

Here, Appellant asserts that the trial court erred in admitting evidence of the "drug-related quality of the neighborhood" where the incident occurred,[4] as well as recordings of Appellant's telephone conversations while incarcerated before trial, as evidence of Appellant's motive pursuant to Pennsylvania Rule of Evidence 404(b)(2).[5] Appellant's Brief at 13-14. Appellant argues,

> [he] was charged [with] aggravated assault and firearms related charges. The material facts are whether [he] intentional[ly] shot the [victim], and whether [he] knowingly possessed a firearm. The evidence of motive admitted here in the form of the drug-related quality of the neighborhood and [his] prison [telephone] calls are not relevant to any of the material facts for the charges or by inference, to the existence of a material fact.

---

[4] Appellant was found guilty of the aforementioned criminal offenses after the jury and the trial court heard evidence that he shot the victim in the ankle and lower leg on the corner of Frankford Avenue and Somerset Street in the City of Philadelphia. Trial Court Opinion, 1/26/22, at 3-4.

[5] Pennsylvania Rule of Evidence 404(b)(2) states that evidence of other crimes, wrongs, or acts may be admissible for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident . . . if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.Evid. 404(b)(2).

*Id.* at 14. Appellant contends that "[f]or evidence of motive to be relevant, there must be sufficient ground to believe that the crime under consideration grew out of, or was in any way caused[] by[,] a prior set of circumstances." *Id.* (citations omitted). In the case *sub judice*, there is no evidence, Appellant asserts, "that the incident grew out of, or was caused in any way[] by[,] prior circumstances related to drug activity in the neighborhood or by virtue of [tele]phone calls after the incident." *Id.*

Regarding Appellant's assertion that the trial court erred in permitting testimony that characterized the neighborhood in which the incident occurred as having a "drug-related quality," we first consider whether Appellant preserved this issue. To preserve a challenge to the admissibility of evidence for appellate review, Pennsylvania Rule of Evidence 103(a)(1) requires a party to make "a timely objection, motion to strike, or motion *in limine*" that "states the specific ground, unless it is apparent from the context," for the objection. Pa.R.Evid. 103(a)(1)(A) and (B). "The applicability of waiver principles presents a question of law, over which our standard of review is *de novo* and our scope of review is plenary." ***Stapas v. Giant Eagle, Inc.***, 198 A.3d 1033, 1037 (Pa. 2018).

"[I]t is axiomatic that issues are preserved when objections are made timely to the error or offense[,]" and the "failure to offer a timely and specific objection results in waiver of the claim[.]" ***Commonwealth v. Baumhammers***, 960 A.2d 59, 73 (Pa. 2008), *cert. denied*, 558 U.S. 821 (2009). "The rule is well[-]settled that a party complaining, on appeal, of the

admission of evidence in the [trial] court [] will be confined to the specific objection there made." ***Commonwealth v. Cousar***, 928 A.2d 1025, 1041 (Pa. 2007) (original brackets omitted), *citing* ***Commonwealth v. Boden***, 159 A.2d 894, 900 (Pa. 1960), *cert. denied*, 553 U.S. 1035 (2008). "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Upon review, we concur with the trial court that Appellant waived this issue because no objection was lodged at or near the time the characterization of the neighborhood was presented at trial. Although Appellant does not cite to specific instances where the words "drug-related quality" were used to describe the neighborhood involved, we have found four instances in which police officers referred to the neighborhood in question as a high drug-trafficking area. N.T., 3/30/21, at 43 (describing the neighborhood as an area where the police "always get complaints from the neighbors for people using illegal narcotics"); ***see also id.*** at 89 (describing the neighborhood as "a high narcotics area" where a "lot of shootings" occur and a "lot of crimes happen"); ***id.*** at 101 (indicating that the corner where the incident took place is a place where drug users hang out and a lot of drug use takes place, including "open-air" drug use); ***id.*** at 116 (stating that the neighborhood was a "high drug area" where anyone driving through the area would "see a lot of open[-]air narcotics sales; not just pull up, go in a house, but it's in the open air"). At no point, during the trial, did Appellant's counsel lodge an objection on the record after the neighborhood in which the incident occurred was

- 6 -

described as being a "high drug area." As such, we find Appellant waived this evidentiary challenge on appeal.

Concerning Appellant's challenge to the admission of the recordings of telephone calls Appellant made while incarcerated, the Commonwealth summarized the content of these recordings as follows:

> In these calls[,] there's specific mentions of Somerset Street. They talk about the corner of Emerald [Street] and Somerset Street, Emerald [Street] and Hart Lane, Helen Street. [Appellant] tells his friend to make sure everyone's laying low until he gets home. They're talking about – they're referencing street corners as real estate. They are talking about just a lot of specific street corners right in that general area [] and talking about the fact that they got [Appellant] out of the way, I'm [(Appellant)] not losing my real estate. I don't know, my cousin got us out of the way, let these new guys move in [on] our real estate. They're acting crazy out there, aren't they? They don't know who to pay homage too, huh?

N.T., 3/31/21, at 5-6.[6]

"Generally speaking, evidence is admissible if it is relevant, that is, if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa. Super. 2014) (citation and original quotation marks omitted); *see also* Pa.R.Evid. 402 (stating, "[a]ll relevant evidence is admissible"). To reiterate,

---

[6] The Commonwealth indicated that the streets and lane that are mentioned in the recordings are within walking distance of the corner of Frankford Avenue and Somerset Street, where the shooting incident in this case occurred. N.T., 3/31/21, at 6.

Pennsylvania Rule of Evidence 404(b)(2) states that evidence of other crimes, wrongs, or acts may be admissible for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident . . . if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.Evid. 404(b)(2); *see also Kinard*, 95 A.3d at 284; *Commonwealth v. Busanet*, 54 A.3d 35, 43 (Pa. 2012) (stating, "[w]hile evidence of prior bad acts is inadmissible to prove the character of a person in order to show conduct in conformity therewith, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident").

In admitting the telephone recordings into evidence and permitting the Commonwealth to play the recordings for the jury, the trial court held that Appellant's telephone conversations were relevant and admissible to support the Commonwealth's theory of motive, *i.e.* that Appellant had a vested interest in the corner where the incident occurred, and he took action to "defend his turf" and secure his interest. Trial Court Opinion, 6/26/22, at 7. The trial court further explained, "the prison calls were relevant evidence in supporting the Commonwealth's theory [of] protecting 'real estate,' meaning street corners where there is a high degree of drug trafficking[.]" *Id.* at 8. "The evidence of the recorded prison calls of 'protecting the real estate' as it relates to drug sales was offered to show motive for the crime committed and was not introduced to show character evidence but rather to show why

Appellant was so invested in the general area of Frankford [Avenue] and Somerset [Street] where the shooting took place." *Id.*

After careful review, we find the trial court's evidentiary ruling regarding the recordings of Appellant's prison calls was not an abuse of the trial court's considerable discretion. As indicated by the Commonwealth, the recordings involved Appellant's discussion of his "real estate" and demonstrated his perceived need to protect against "losing his real estate" to other people. We concur with the trial court, and the record supports, that this evidence was relevant to establish Appellant's motive or intent for carrying out the shooting, which was germane to a material element of Appellant's aggravated assault conviction. As such, Appellant's challenge to the trial court's evidentiary ruling regarding the recordings of prison calls is without merit.

In his second issue, Appellant asserts that the trial judge erred when she failed to recuse herself from the case because of her familiarity with the neighborhood, having lived in the neighborhood where the incident occurred when she was a child. Appellant's Brief at 17-20. Appellant cites Pennsylvania Code of Judicial Conduct Rule 2.11 as requiring a jurist to recuse himself or herself from a case when disqualification is required, regardless of whether a motion for recusal is filed. *Id.* at 17-18. At the very least, Appellant argues, a jurist is required to disclose to the parties information the jurist believes may be relevant to a motion for recusal. *Id.* at 18. Appellant contends the trial judge in the case *sub judice* failed to inform the parties of her "personal knowledge and intimate familiarity with the neighborhood where the incident

took place" until the sentencing hearing. *Id.* at 18. Appellant further contends that the trial judge's familiarity with the neighborhood from childhood gave rise for the "potential for impartiality."

The Pennsylvania Code of Judicial Conduct 2.11(A) states, in pertinent part, that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including [when the] judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." PA ST CSC Rule 2.11. An Official Comment to Rule 2.11 states that "[a] judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed." *Id.* at Official Comment 2. While this Court may review the denial of a motion to recuse a jurist for an abuse of discretion, this Court is without jurisdiction to enforce the mandate that a jurist disqualify himself or herself *sua sponte*. **Commonwealth v. Kearney**, 92 A.3d 51, 60-62 (Pa. Super. 2014) (stating, "alleged bias stemming from facts gleaned from the judicial proceedings will rarely be grounds for recusal" unless the party seeking recusal demonstrates that the jurist's opinion derives from an extrajudicial source and denotes such a high degree of favoritism or antagonism as to make fair judgment impossible), *appeal denied*, 101 A.3d 102 (Pa. 2014); **see also 2303 Bainbridge, LLC v. Steel River Bldg. Sys., Inc.**, 239 A.3d 1107, 1118 (Pa. Super. 2020) (stating, "an appellant's reliance on the Code of Judicial Conduct is 'misplaced' when arguing that [a] trial judge erred in failing to

- 10 -

recuse [because e]nforcement of the Code of Judicial Conduct is beyond the jurisdiction of [this] Court" (citations and original brackets omitted)).

Before imposing sentence on Appellant in the case *sub judice*, the trial court, after learning that Appellant grew up in Philadelphia, commented as follows:

> You know why I ask where [Appellant] grew up?  Because this happened where I grew up, right.  This incident happened where I grew up at Frankford [Avenue] and Somerset [Street].  So it really is like full circle for me.  Obviously it's been a long time, you know, I'm older, but that's where I was as a kid walking up and down Frankford Avenue buying backpacks for school.  Like, I have vivid memories of the toy store there on Frankford Avenue and the places we would buy penny candy.  . . .  This is my neighborhood.  It's tough.  It's a big deal.

N.T., 5/27/21, at 7 (paragraph formatting omitted).  To the extent Appellant claims he is entitled to a new trial because the trial judge declined to recuse from this matter, we conclude that Appellant waived this issue by failing to make a recusal request promptly after learning of the trial judge's personal knowledge of the neighborhood in which the shooting incident occurred.[7]  ***See***

***Lomas v. Kravitz***, 170 A.3d 181, 197 (Pa. 2017) (stating, "[A] party must

_____

[7] Alternatively, there is no substantive merit to Appellant's recusal claim.  The trial court's personal, extrajudicial knowledge, as demonstrated by her comments, related exclusively to the location as it existed years, if not decades ago, when such a thing as "penny candy" still existed.  The trial court expressed no personal knowledge of this particular incident, Appellant, the victim, or any of their relatives and close relations.  Most county judges have a youthful recollection of the county in which they preside.  As such, there is nothing in the trial court's comments from which to infer favoritism or antagonism of such a degree as to make fair judgment appear to be impossible.

seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse.  If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived."); *see also* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

In his final issue, Appellant challenges his sentence on the grounds his constitutional right to a jury trial and his due process rights were violated when the trial court failed to adhere to its statement to impose "no further penalty" on Appellant's persons not to possess a firearm conviction. Appellant's Brief at 20-22.  Appellant asserts that he waived his right to a jury trial on this charge "based on a specific promise by the trial court to sentence [him] to 'no further penalty.'" *Id.* at 21.  Appellant contends that when the trial court sentenced him to 8 to 20 years' incarceration upon finding Appellant guilty in a non-jury trial of persons not to possess a firearm, he failed to receive what he bargained for in the waiver process.  *Id.*  As such, Appellant argues, he did not voluntarily, knowingly, and intelligently waive his right to a jury trial.  *Id.*

A claim that a representation as to sentencing invalidates an otherwise valid jury waiver raises a question of law for which our standard of review is *de novo* and our scope of review is plenary.  *Commonwealth v. Houck*, 948 A.2d 780, 787 n.17 (Pa. 2008), *cert. denied*, 555 U.S. 1056 (2008).

It is well-established that,

> [C]riminal defendants have a constitutionally guaranteed right to a trial by jury. In all cases, a defendant may waive a jury trial with approval by a judge of the court in which the case is pending. To be valid, [] a jury waiver must be knowing and voluntary, and the accused must be aware of the essential ingredients inherent to a jury trial. [T]he three ingredients are: 1) that the jury be chosen from members of the community (*i.e.*, a jury of one's peers), 2) that the accused be allowed to participate in the selection of the jury panel, and 3) that the verdict be unanimous.

**Houck**, 948 A.2d at 787.[8] "[I]t is clear that a defendant does not need to know his possible sentence to execute a voluntary jury trial waiver." **Id.**

"[T]he voluntariness of a jury waiver can be undermined where the defendant is informed of a range of potential sentences at a jury waiver colloquy that is less than the sentence eventually imposed." **Id.** at 788. "[I]f a defendant seeks to invalidate an otherwise valid jury waiver based on a trial court's recitation of his or her potential sentence, the defendant [is] required to demonstrate that his or her understanding of the length of the potential sentence was a material factor in making the decision to waive a jury trial." **Id.**

---

[8] Appellant's issue does not encompass a challenge to his sentence on the ground that the trial court failed to explain during the waiver colloquy the "three ingredients" inherent to a jury trial, as discussed *infra*. As such, we find Appellant waived such a challenge on appeal. Moreover, at the time of the oral waiver colloquy in the case *sub judice*, Appellant had already participated in the selection of a jury of his peers and was unanimously convicted by the jury of the three aforementioned crimes. As such, Appellant was adequately aware of the three essential ingredients inherent to a jury trial.

Here, a review of the record demonstrates that as part of Appellant's oral colloquy in which he waived his right to a jury trial on the single charge of persons not to possess a firearm, the following dialogue occurred:

| | |
|---|---|
| [Trial Court:] | I just know that **I will likely give no further penalty on the [persons not to possess a firearm charge, if convicted,]** given that he's already convicted of [firearms not to be carried without a license and carrying firearms on public streets or public property in Philadelphia.] |
| . . . | |
| [Appellant's Counsel:] | So, I'll start from square one. [Appellant,] how old are you today? |
| [Trial Court:] | We know he's 40. We know he finished high school. We know he's on medication, so let's just go to the nitty-gritty. |
| | Sir, [Appellant,] I know this is a lot after a verdict, but I want you to just take your time and listen to your attorney talk about the two options, basically, that you have today, okay, with respect to how we move forward with this last charge. |
| [Appellant's Counsel:] | [Appellant], you have the absolute right to have the jury hear the charge[] of [] a person not to possess a firearm. If you choose to, you can waive that right and ask [the trial court] to hear the charge[] without actually pleading guilty. It will be a stipulated trial before [the trial court] and [the trial court] will make a determination as to guilt or innocence. Are you okay with proceeding that way[?] |

- 14 -

[Trial Court:]    Basically I heard all the testimony, and, you know, the likelihood that I would find you guilty of [persons not to possess a firearm] if the Commonwealth has proof that you are a person who's not to possess a firearm because you have a previous conviction, which, if I'm not mistaken, we bifurcated this so the jury wouldn't have to know that you are a felon who [the Commonwealth] argued was in possession of firearm, right?

So the jury has already found that you were in possession of a firearm, they just didn't know that you were a felon in possession of a firearm. So now the Commonwealth is going to enter into evidence what would make you a felon not to be in possession of a firearm, and based upon the jury's verdict and the evidence that I heard in this case, it's almost - I don't want to say it's a sure thing, but a stipulated trial is using all that evidence, it's a sure thing I will likely convict you of [a person not to possess a firearm], but **I am telling you now that you have my word that I will not give you an additional penalty for [this conviction].** Whatever penalty you may or may not get for [firearms not to be carried without a license and carrying firearms on public streets or public property in Philadelphia,] which the jury convicted you of, **you will get no more punishment for [persons not to possess a firearm] from me**.

[Appellant's Counsel:]    Do you understand? [(question directed towards Appellant)]

[Trial Court:]    Because what we would have to do is bring the jury back out here, sit them in the box, [the Commonwealth is]

going to tell them that you have a felony conviction, and then I'm going to give them the jury instruction on [persons not to possess a firearm], and they're gonna - you know, they already found you guilty of [firearms not to be carried without a license and carrying firearms on public streets or public property in Philadelphia]. There's concrete proof that you're a convicted felon, right? It's not disputable. You have a prior conviction for [possession with the intent to deliver a controlled substance] I think, right, that would make you ineligible [to possess a firearm]. You have a prior conviction for a gun. That's going to make you ineligible and they'll find you - I mean, I don't want to say what they're going to do, but it's most probable. So we can do it one of those two ways. If you do it by stipulated trial, you're going to get - **either way you're going to get no further penalty.**

[Appellant's Counsel:]    It's going to preserve your appellate rights.

[Trial Court:]    I don't want you to plead guilty.

[Appellant's Counsel:]    So you're pleading not guilty, and the [trial court] is making the determination based on the record and based on what the Commonwealth is going to present to [the trial court] regarding your prior record.

[Appellant:]    All right.

[Appellant's Counsel:]    You're okay with that?

[Trial Court:]    I don't want you to feel forced or pressured - I mean, **you are being pressured because we're at the end of a jury trial and you've just**

> **been convicted and now they want to go ahead and ask you to make rational decisions.**
>
> Please someone remind me to never do this again. I will never do it again because **it doesn't feel like this is a choice that this man is making of his own free will.**
>
> The only other option is to bring the jury back. So, [Appellant], take a minute. I don't want to pressure you. I want you to take a minute to talk to your attorney. Do you want to [talk to your attorney privately]?

[Appellant:]          Yeah.

[Trial Court:]        Okay. Go ahead.

([Appellant] exited the courtroom.)

([Appellant] entered the courtroom.)

[Trial Court:]        [Appellant] --

[Appellant:]          Yes, ma'am.

[Trial Court:]        -- hi. You had a chance to talk to your lawyer, right?

[Appellant:]          Yes.

[Trial Court:]        It's a little calmer now. And you understand the situation, right?

[Appellant:]          Yes.

[Trial Court:]        All right. And I told you **I'm not going to jam you up on this charge, and that whatever sentence you get is going to be based upon what the jury convicted you of, not this [charge]**. Okay?

[Appellant:]          Yes.

| | |
|---|---|
| [Trial Court:] | All right. You don't have to do this, you didn't have to do that. Do you feel like you're now clear-headed enough to make a fair decision, something that you had a chance to talk to your attorney about, and a decision that you're doing of your own free will? |
| [Appellant:] | Yes. |
| [Trial Court:] | All right. And you want to not have the jury hear the [prior felony] evidence, and you just want me to decide based upon the evidence that was presented against you at the trial as well as whatever [the Commonwealth] is going to tell me; is that right? |
| [Appellant:] | Yes. |
| [Trial Court:] | Okay. And you're making this decision of your own free will? |
| [Appellant:] | Yes. |
| [Trial Court:] | We're not forcing you, we're not threatening you, **we're not promising you anything other than I told you I'm going to give you no further penalty on the [persons not to possess a firearm charge] and not jam you up over - on this charge.** You understand that, right? |
| [Appellant:] | Yes. |
| [Trial Court:] | That's the only promise that I gave that this will not inhibit your decision, correct? |
| [Appellant:] | Yes. |
| [Trial Court:] | All right. So it's a stipulated trial. **But if you're found guilty, you will not be punished for this crime.** |

N.T., 3/31/21, at 112, 114-120 (paragraph formatting modified, emphasis added).

Throughout his oral colloquy,[9] Appellant was repeatedly promised by the trial court that "no further penalty" would be imposed if he agreed to waive his right to a jury trial and the trial court subsequently convicted him of persons not to possess a firearm. In other words, in exchange for Appellant's oral waiver of a jury trial, the trial court promised Appellant that he would not receive a sentence, *i.e.* "no further penalty," if he were found guilty of persons not to possess a firearm.[10]

In fashioning Appellant's punishment, the trial court sentenced Appellant, *inter alia*, to 8 to 20 years' incarceration for his aggravated assault conviction, as well as 8 to 20 years' incarceration for his persons not to possess a firearm conviction. Although the trial court ordered these sentences to run concurrently (thereby imposing an aggregate sentence of 8 to 20 years' incarceration), the trial court nonetheless imposed a sentence for Appellant's persons not to possess a firearm conviction. Thus, while Appellant reasonably expected to receive "no further penalty" for the Section 6105 offense in exchange for his waiver, he did, in fact, receive a sentence contrary to the

_____

[9] A waiver form, in which Appellant waived his right to a jury trial in writing, does not appear as part of the trial court record.

[10] Section 9721 of the Sentencing Code states that, in fashioning a sentence, a trial court may choose to impose no further penalty following a determination of guilt. 42 Pa.C.S.A. § 9721(a)(2).

plain-language promises made by the trial court. Consequently, we find that Appellant's waiver of his right to a jury trial was unknowingly, unintelligently, and involuntarily given based upon the record before us. **_Houck_**, 948 A.2d at 788 (stating, "the voluntariness of a jury waiver can be undermined where the defendant is informed of a range of potential sentences at a jury waiver colloquy that is less than the sentence eventually imposed").[11]

As such, we vacate Appellant's sentence of 8 to 20 years' incarceration imposed for his persons not to possess a firearm conviction. Because our decision to vacate this aspect of Appellant's judgment of sentence does not alter the trial court's overall sentencing scheme (Appellant's overall sentence remains as an aggregate sentence of 8 to 20 years' incarceration), we affirm Appellant's judgment of sentence, as modified.

Judgment of sentence affirmed, as modified.

Judge Murray joins.

Judge Stabile concurs in the result.

---

[11] We deem Appellant's waiver of his right to a jury trial to be invalid in the case _sub judice_ because the trial court imposed a sentence of incarceration after promising that "no further penalty" would be imposed in exchange for Appellant's waiver. If the trial court had, in fact, imposed no further penalty, we would have found that, based upon the oral colloquy, Appellant validly waived his right to jury trial.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/12/2023</u>