# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Cranberry          :
                                   :
                                   :
                  v.              :    No. 375 C.D. 2020
                                   :    Argued: February 8, 2021
Randy J. Spencer,          :
                  Appellant    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge


OPINION BY
JUDGE COHN JUBELIRER               FILED: March 24, 2021

Randy J. Spencer appeals from a March 13, 2020 Order (Order) of the Court of Common Pleas of Venango County (trial court), which imposed fines for six different properties (Properties) owned by Spencer at six separate docket numbers pursuant to complaints filed by the Township of Cranberry based on Spencer operating a junkyard in violation of Township ordinances. Before this Court, Spencer argues that, although he filed only one notice of appeal, he preserved his arguments on the merits as to all six properties. As for the merits, Spencer argues the trial court abused its discretion in imposing the fines, the trial court committed an error of law in determining that the Township's ordinance does not require business use for a property to be considered a junkyard, and the trial court erred in dismissing his selective enforcement challenge. However, under *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), Spencer was required to file individual notices of appeal for each of the six cases, as they had not been consolidated before the trial

court.  Under these specific facts, we are constrained to quash Spencer's appeal as to the five orders entered at the trial court's dockets 705-2019 to 709-2019, from which no appeals were filed.  We do not quash the notice of appeal which was properly filed from the order issued at trial court docket 704-2019, involving the Deep Hollow Property.  Upon review of the record, we determine that the trial court made no error in imposing the fine for the violations on the Deep Hollow Property.  Accordingly, we affirm the trial court's order in that case.

## I.    BACKGROUND

On January 31, 2019, the Township Zoning Officer (Zoning Officer) issued six zoning enforcement notices (Notices) to Spencer for violations at the Properties identified as follows:  the "Deep Hollow Property," trial court docket 704-2019; the "Waugaman Property," trial court docket 705-2019; the "Hill Property," trial court docket 706-2019; the "Trailer #1 Property," trial court docket 707-2019; the "Trailer #2 Property," trial court docket 708-2019; and the "Goodman Property," trial court docket 709-2019.[1]

Five of the Notices, for the Deep Hollow Property, the Waugaman Property, the Hill Property, the Trailer #1 Property, and the Trailer #2 Property, were for violations of Sections 195-4 and 195-11 of the CRANBERRY TOWNSHIP, PENNSYLVANIA, ZONING ORDINANCE (2012) (Zoning Ordinance), Zoning Ordinance

---

[1] The Deep Hollow Property is located at 4949 United States 322 (U.S. 322), Cranberry Township, and is identified as tax parcel number 08,024.-011.-000.  The Waugaman Property is located at U.S. 322, Cranberry Township, and is identified as tax parcel number 08,024.-012A.-000.  The Hill Property is located at 5273 U.S. 322, Cranberry Township, and is identified as tax parcel number 08,001.-073.-000.  The Trailer #1 Property is located at U.S. 322, Cranberry Township, and is identified as tax parcel number 08,024.-01G.-000.  The Trailer #2 Property is located at 4110 Deep Hollow Road, Cranberry Township, and is identified as tax parcel number 08,001.-066.-000.  The Goodman Property is located at 166 Garden Lane, Cranberry Township, and is identified as tax parcel number 08,024.-001B.-000.

§§ 195-4, 195-11.[2] These five Notices informed Spencer he was located in an A-1 Conservation District and that a junkyard is not a permitted use in that district. The Notices stated that Spencer had 7 days to begin removing the abandoned motor vehicles from each of the Properties and 30 days to completely do so. The 5 Notices also advised Spencer of his right to appeal the Notices to the Township Zoning Hearing Board within 30 days.

The sixth Notice, for the Goodman Property, which is located in a different district, informed Spencer that he was in violation of Section 132-4(D) of the CRANBERRY TOWNSHIP, PENNSYLVANIA, PROPERTY MAINTENANCE CODE (2018) (Property Maintenance Code), which limits the number of abandoned or junked vehicles on one's property.[3] Property Maintenance Code § 132-4(D). That Notice

---

[2] Section 195-4 states that

> [n]o structure shall be located, erected, constructed, reconstructed, moved, altered, converted or enlarged, nor shall any structure or land be used or be designed to be used except in full compliance with all the provisions of this chapter and after the lawful issuance of all permits and certificates required by this chapter.

CRANBERRY TOWNSHIP, PA., ZONING ORDINANCE (2012) § 195-4. Section 195-11 lists Junkyards as a Conditional Use, *id.* § 195-11, and Section 195-6A defines a "Junkyard" as

> [l]and or structures used for the collection, storage, processing and sale of scrap metal, scrapped, abandoned or junked motor vehicles, machinery, equipment, wastepaper, glass, rags, containers and other discarded materials. It shall not include, however, refuse or garbage kept in a proper container for the purpose of prompt disposal.

*Id.* § 195-6A.

[3] Section 132-4(D) prohibits "[t]he storage or accumulation of more than two abandoned or junked motor vehicle[s] that can be seen from any public highway, road, street, avenue, lane or alley which is maintained by the Township or by the Commonwealth of Pennsylvania." CRANBERRY TOWNSHIP, PA., PROPERTY MAINTENANCE CODE (2018) § 132-4(D). Section 132-4(D) does not "apply to a business enterprise that is regularly engaged in the repair of motor **(Footnote continued on next page…)**

required Spencer to begin removing the vehicles from the Goodman Property within 20 days and to completely do so within 30 days. All six Notices warned Spencer that failure to comply could result in fines being imposed. Spencer did not appeal any of the Notices or remedy the violations.

The Township then filed six civil complaints with a Magisterial District Judge (MDJ), seeking to enforce the six Notices. The MDJ entered six judgments in the Township's favor and against Spencer, imposing fines and costs in the amount of $609.25 for each of the Properties. (Reproduced Record (R.R.) at 10a.) Spencer then appealed the six MDJ judgments to the trial court. The Township filed one complaint for each of the six Properties asserting the alleged violations were conclusively established by Spencer's failure to appeal to the Zoning Hearing Board. Accordingly, for each of the Properties, the Township asked the trial court to grant judgment in its favor for $21,500, representing $500 per day for each day in which Spencer was violating the Code, plus court costs and attorneys' fees. (Compl. ¶ 15, R.R. at 6a.) Spencer subsequently filed answers with new matter, and the Township filed replies to the new matter. Importantly, at no time did either party move to consolidate, nor did the trial court *sua sponte* consolidate, the six matters.

On March 10, 2020, a joint evidentiary hearing was held in the six cases. The Township called the Zoning Officer to testify. The Zoning Officer testified as follows. The Zoning Officer had 10 years of experience in zoning enforcement and worked for the Township for 2½ years. (R.R. at 41a.) The Zoning Officer inspected Spencer's Properties "numerous times." (*Id*. at 44a.) The Zoning Officer testified

---

vehicles or the sale of motor vehicles." *Id.* It also "does not apply to [an] active farm." *Id*. A junked motor vehicle is defined as "[a]ny motor vehicle that[] [] [i]s not in operable condition[] and/or [] [d]oes not have properly affixed thereto . . . a current license plate." Section 132-3 of Property Maintenance Code, Property Maintenance Code § 132-3.

4

as to sending the Notices, from which Spencer did not appeal to the Zoning Hearing Board, and filing the complaints with the MDJ, who ruled in the Township's favor. The Zoning Officer cited other individuals during this time for their properties and they generally complied and worked with the Zoning Officer to remedy the violations, so they were not required to pay fines, (*id*. at 57a, 70a, 72a-74a), whereas Spencer did not take any action, (*id*. at 45a, 56a, 85a-86a). On cross-examination, the Zoning Officer was asked about William Rodibaugh, an individual who was sent notices by the Zoning Officer related to Rodibaugh's property, and who testified later at the hearing. The Zoning Officer explained that Rodibaugh was permitted to contest the validity of the notices because he contacted and met with the Zoning Officer several times before the 30-day notice expired. (*Id*. at 84a-85a, 88a.) The Zoning Officer filed the citation with the MDJ but withdrew it upon Rodibaugh working with the Township and demonstrating a nonconforming use. (*Id*. at 77a, 89a-90a.)

Spencer offered the testimony of the Township's former Zoning and Code Enforcement Officer (Former Zoning Officer), Rodibaugh, and testified on his own behalf. The Former Zoning Officer testified as follows. On the day of his hiring, the Former Zoning Officer was told of ongoing issues with Spencer and to give special attention to Spencer and his Properties. (*Id*. at 106a-07a.) The Former Zoning Officer claimed that other individuals were issued notices of violation "in order to be able to cite [] Spencer." (*Id*. at 113a.) He was told to issue around 9 to 10 notices of violations to others, and if they complied, the Former Zoning Officer could withdraw the notices. (*Id*. at 113a-14a.) The Former Zoning Officer refused to do so because he "was not going to fabricate charges." (*Id*. at 114a.) During cross-examination, the Former Zoning Officer, who was terminated by the Township

5

in 2017, admitted that he currently had a pending lawsuit against the Township. (*Id*. at 118a, 121a.)

Spencer also presented the testimony of Rodibaugh, who testified as follows. Rodibaugh received a notice of violation and was ultimately fined by the MDJ. (*Id*. at 128a-29a.) Following the MDJ's decision but before the 30-day period to appeal to the trial court expired, Rodibaugh communicated with the Zoning Officer and offered evidence[4] that he had a lawful, nonconforming use. (*Id*. at 129a, 132a.)

Spencer testified on his own behalf as follows. Spencer attempted to work with the Township to remedy the current issues for over 20 years. (*Id*. at 135a.) In 2016, Spencer met with the Township to discuss moving his vehicles from the Properties to another property, which is naturally screened and would qualify for a special exception under the Township's Zoning Ordinance. (*Id*. at 139a.) Spencer applied for a junkyard license but received no response. (*Id*. at 140a.) Spencer also previously applied for a conditional use permit many times, but the Township has not acted on those applications. (*Id*. at 141a, 145a-46a.) In response to questions from the trial court, Spencer explained that the Deep Hollow Road and the Waugaman Properties are separate but "adjoining parcels," the Trailer #1 Property and the Trailer #2 Property, both on Garden Lane, are also adjoining, and the Goodman Property and Waugaman Property "touch each other." (*Id*. at 151a-52a.) When asked if the Properties were "four [] basically separate non-contiguous properties," Spencer replied "yes." (*Id*. at 152a.)

On March 13, 2020, the trial court issued its Opinion and Order in which all six docket numbers were listed in the caption. The trial court found that each of the

---

[4] The evidence offered included titles for the vehicles, photographs of the vehicles taken before the Zoning Ordinance was enacted, copies of inspections, and license plates for the vehicles. (R.R. at 132a.)

Properties was used as a "junkyard" as defined in Section 195-6A of the Zoning Ordinance. The trial court dismissed the testimony of the Former Zoning Officer, stating the Former Zoning Officer was incorrect in his "personal interpretation of the Zoning Ordinance," the Former Zoning Officer's refusal to enforce does not foreclose future action being taken against an individual, Spencer had the ability to pursue other avenues beyond appealing the decision of the MDJ, and selective enforcement was not proven in this instance. (Trial Ct. Op. at 4.) The trial court's only issue with the MDJ decision related to the fines. The trial court noted that fining each "parcel" was incorrect and instead it should have been "land," which is the term used in the definition of junkyard under Section 195-6A of the Zoning Ordinance. The trial court explained that "two adjoining parcels having a frontage width of 110 feet each (220 feet combined) resulted in damages being awarded of $1,000.00 ($500.00 each) compared to a [50-]acre parcel where only $500.00 was awarded as damages." (Trial Ct. Op. at 5.) The trial court concluded that the MDJ's fine "was excessive in that it considered adjoining parcels as separate pieces of land, rather than one piece of land." (*Id.*)

The trial court, accordingly, ordered damages to be assessed as follows: the Waugaman Property and Goodman Property were to be considered one piece of land, and the fine was "reduced from $1,000.00 to $500.00 plus costs of $109.25 because they are used for the same purpose, i.e.[,] a 'JUNKYARD' and are contiguous to each other[;]" the fine for the Trailer #1 Property and Trailer #2 Property was reduced from $1,000.00 to $500.00 plus costs of $109.25 as they were contiguous to each other and used for the same purpose; the fine for the Deep Hollow Property and the Hill Property remained at $1,000.000 plus costs of $218.50 because "they are not contiguous to nor do they adjoin any other properties subject to these

7

appeals." (Trial Ct. Order.) The trial court's order was filed at each of the six trial court dockets.

Thereafter, Spencer filed a single Notice of Appeal to this Court listing all six trial court docket numbers and attaching thereto a single copy of the trial court's order where a handwritten check mark appeared next to docket number 704-2019. The trial court directed Spencer to file a Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b) (1925(b) Statement).[5] Spencer filed the 1925(b) Statement, asserting the trial court erred in: denying Spencer's appeal when the Township presented no evidence establishing a violation of the Zoning Ordinance or the extent of the violation to the trial court; imposing the maximum fine with no evidence presented by the Township on the extent of the violation; concluding that Spencer "waived the issue of the violation or stipulated that the issue of violation was not to be decided where [Spencer] merely acknowledged the Township's position in the matter and the Township offered no proof of any violation[;]" concluding that Spencer was in violation of the Zoning Ordinance; "failing to find facts demonstrating that the [P]roperties were used as a 'junkyard' . . . in the absence of any evidence that [Spencer] was operating the properties as a business or maintaining junk thereon[;]" dismissing Spencer's claim of selective enforcement; and adopting the findings of facts of the MDJ. (1925(b) Statement at 1-2.)

---

[5] Pa.R.A.P. 1925(b) provides:

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

The trial court responded with its "Opinion Sur 1925" (1925(a) Opinion),[6] stating that counsel for Spencer agreed that the trial was for the mitigation of the penalty and not the violation itself.[7] The trial court stated that it "did not consider the question of whether [Spencer] had actually violated the [Zoning O]rdinance," as "this had already been determined." (1925(a) Opinion at 3.) The trial court "found facts as they related to the appropriate amount of the penalty awarded which included and necessitated examination of the applicable language of the Zoning Ordinance and . . . a review of the calculation of fines and costs by the [MDJ.]" (*Id*. at 3-4.)

On July 1, 2020, this Court issued an order, stating that upon review, it appeared Spencer filed a single notice of appeal to the trial court's order disposing of six related matters at separate dockets. Accordingly, the parties were directed to "address in their principal briefs on the merits or other appropriate motion the propriety of filing a single notice of appeal from matters appearing at six (6) different docket numbers," citing the Supreme Court's decision in *Walker*. (July 1, 2020 Order.)

---

[6] Pa.R.A.P. 1925(a)(1) provides in part:

(1) *General rule*. Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall within the period set forth in Pa.R.A.P. 1931(a)(1) file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

[7] While the trial court indicated that counsel for Spencer agreed the merits of the violation were not before the trial court, from a review of the transcript it is not clear that such an agreement was made.

9

## II.    PARTIES' ARGUMENTS[8]

Spencer argues that this Court may consider the case without "implicat[ion of] any of the considerations of . . . *Walker*." (Spencer's Brief (Br.) at 21.) Spencer cites *Commonwealth v. Johnson*, 236 A.3d 1141 (Pa. Super. 2020),[9] for the proposition that "*Walker* does not require quashal when a single Notice of Appeal lists multiple docket numbers." (Spencer's Br. at 21.) Furthermore, in *2303 Bainbridge, LLC v. Steel River Building Systems, Inc.*, 239 A.3d 1107 (Pa. Super. 2020), Spencer contends, "[t]he Superior Court declined to quash [the appeal], noting that the concerns present in *Walker* were not present in that there were not multiple defendants, the facts and issues applied only to one [a]ppellant, and the outcome will affect only one [a]ppellant." (Spencer's Br. at 22.) Therefore, Spencer asserts *Walker* does not require quashal in this case as the concerns from a single filing are likewise not present here.

Spencer next asserts that the trial court abused its discretion in awarding the maximum amount of damages to the Township because "the Township did not offer any evidence regarding the extent or nature of the alleged violation" before the trial court. (Spencer's Br. at 14.) Spencer contends that the trial court possessed discretion in awarding penalties under the Zoning Ordinance based on the evidence presented; however, there was no evidence to establish that the maximum fine should be imposed. (*Id.* at 14-15.) Spencer maintains that the trial court lacked any evidence to impose a fine, especially as Spencer "presented evidence that he had been singled out for enforcement and treated differently than [other] Township

---

[8] We have reordered Spencer's arguments to first address whether this appeal should be quashed pursuant to *Walker* as that is a threshold issue in this case.

[9] While not binding, Superior Court decisions "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

residents." (*Id*. at 17.) Spencer also argues that, to qualify as a junkyard, the Zoning Ordinance requires that the Properties be used for "processing and sale." (*Id*. at 18 (quoting Zoning Ordinance § 195-6A).) Spencer argues that "the violation becomes *de minimis*" because the "junk" is not being sold and, thus, the Properties cannot be junkyards. (*Id*. at 18-19.) Spencer also asserts that a business use is necessary because the "Township, presumably in order to address this issue, has enacted a 'Property Maintenance Code' dealing with 'junked motor vehicles.'" (*Id*. at 19.) This is because "the 'Property Maintenance Code' does not apply to 'a business enterprise that is regularly engaged in the repair of motor vehicles or the sa[l]e of motor vehicles.'" (*Id*. (quoting Property Maintenance Code § 132-4(D)).)

Spencer also contends that selective prosecution was present in this case, and it was an error for the trial court to conclude otherwise. Spencer argues that he was not treated the same as other individuals, like Rodibaugh, who were also issued violations around the same time. (*Id*. at 23-24.) The Former Zoning Officer's testimony, Spencer argues, supports the fact that "Spencer was singled out." (*Id*. at 24.)

The Township asserts that this matter should be quashed pursuant to *Walker* and that Spencer is incorrect in its interpretation of *Johnson* because the Superior Court determined that the appellant in that case filed four separate notices of appeal, not one notice with four docket numbers attached. (Township's Br. at 7-8 (citing *Johnson*, 236 A.3d at 1148).) The Township also argues that *Bainbridge* is contrary to other Superior Court precedent, and this Court is not beholden to those decisions. (Township's Br. at 8.) The Township argues that, pursuant to *Commonwealth v. Larkin*, 235 A.3d 350 (Pa. Super. 2020), this is a bright-line rule and is not dependent on any set of facts. (Township's Br. at 9.)

As to the merits, the Township argues that there was no abuse of discretion in this instance because the merits of the zoning violation could not be challenged since Spencer did not appeal the Notices to the Zoning Hearing Board. (*Id*. at 10-11.) The Township asserts that Section 617.2(a) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10617.2(a),[10] does not require any evidence for "a trial court to impose a $500 fine for each day that the violation occurred." (Township's Br. at 12-13.) The Township also argues that Spencer's business argument is waived because he did not appeal the Notices and, even if not waived, it is without merit. (*Id*. at 14.) Spencer was still in violation of the Zoning Ordinance, the Township contends, and thus the trial court had the authority to impose the full amount of the fine per violation. (*Id*.) The Township argues that Spencer's argument that the Zoning Ordinance's definition of a junkyard is limited to business purposes is incorrect. (*Id*. at 16.) Further, the Township asserts that "Spencer's interpretation is not the only reasonable interpretation of the [Zoning O]rdinance and[,] in fact[,] is unreasonable. Rather, the trial court's interpretation of the governing ordinance is the proper interpretation." (*Id*.) The Township likewise contends that the selective enforcement challenge was waived by Spencer's failure to appeal to the Zoning Hearing Board or, if not waived, is meritless. (*Id*. at 17.) Spencer did not meet his burden of demonstrating selective enforcement, the Township asserts, because Rodibaugh's testimony showed he worked with the Township, whereas Spencer did not. (*Id*. at 18-19.)

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, added by Act of December 21, 1988, P.L. 1329, 53 P.S. § 10617.2(a).

12

## III. DISCUSSION

### A. Whether a single notice of appeal is sufficient to appeal the trial court's orders in six docket numbers.

Upon review of the appeal to this Court, we directed both parties to address the propriety of filing one notice of appeal as to an order entered at six separate, unconsolidated docket numbers based upon the Supreme Court's decision in *Walker*. As this issue presents a question of law, our scope of review is plenary and the standard of review is de novo. *Walker*, 185 A.3d at 974. In *Walker*, the Supreme Court considered the Commonwealth's single notice of appeal from an order disposing of four motions to suppress evidence filed by four different criminal defendants at four separate docket numbers. *Id*. at 971. The Superior Court, on appeal from the trial court, examined the Official Note of Rule 341 of the Pennsylvania Rules of Appellate Procedure, which states, in relevant part, that "[w]here, however, **one** or more **orders** resolves issues **arising on more than one docket** or relating to more than one judgment, **separate notices of appeal must be filed.**" Pa.R.A.P. 341(a), Official Note (emphasis added). The Superior Court determined that four separate notices of appeal should have been filed and quashed the appeal. The Supreme Court "agree[d] with the Superior Court's analysis," citing potential issues and "unintended consequences" when a court "must 'go behind' the notice of appeal to determine if the same facts and issues apply to all of the appellees." *Walker*, 185 A.3d at 976-77. However, despite this agreement with the Superior Court's reasoning, the Supreme Court reversed the Superior Court's order quashing the appeal. In doing so, the Supreme Court determined that the Official Note should be applied prospectively and not to the cases then on appeal, as it goes against decades of courts seldom quashing appeals on this ground. *Id*. The Supreme Court stated that in future cases, the courts will "require that **when a single order**

13

**resolves issues arising on more than one lower court docket, separate notices of appeal must be filed.** The failure to do so will result in quashal of the appeal." *Id*. at 977 (emphasis added). This is a "bright-line mandatory instruction to practitioners to file separate notices of appeal." *Id*. at 976-77.

Before this Court, Spencer cites two subsequent Superior Court decisions, *Johnson* and *Bainbridge*, for the proposition that this appeal should not be quashed. The facts of those cases, however, are distinguishable from the facts before this Court. In *Johnson*, the appellant filed **four notices of appeal** and listed all four trial court docket numbers on each notice of appeal. The appellant "italicized only one case number on each notice of appeal," which the Superior Court held "**perfected four appeals** from each of the four common pleas court dockets." *Johnson*, 236 A.3d at 1148 (emphasis added). The Superior Court stated that "it is indisputable that Johnson filed a **separate notice of appeal** for each of the four dockets below." *Id*. (emphasis added). The fact that more than one docket number was listed on the notice of appeal was not, and should not be, disqualifying. In contrast, here, Spencer did not file six separate notices of appeal; he filed only **one notice of appeal** listing all six docket numbers. Accordingly, the Superior Court's decision in *Johnson* does not resolve the issue before us.

Spencer's reliance on *Bainbridge* is likewise misplaced. Bainbridge superficially appears similar, because the appellant in *Bainbridge* included three docket numbers in a single notice of appeal and the Superior Court declined to quash the appeal. *Bainbridge*, 239 A.3d at 1110 n.1. However, the Superior Court reasoned that **the dockets were consolidated or disposed of**, with **only one of the docket numbers remaining open**. *Id*. We recognize that the Superior Court also "note[d] that the concerns present in *Walker* [were] not present [t]here: there [were]

14

not multiple defendants, the facts and issues appl[ied] only to one appellant, and the outcome [] affect[ed] only one appellant." *Id*. Spencer argues that, as in *Bainbridge*, the concerns present in *Walker* are likewise not implicated here, and therefore, as in *Bainbridge*, we should not quash this appeal. This argument overlooks one key distinction between this matter and *Bainbridge*: here, there is no evidence, nor do the parties argue, that the six dockets were consolidated before the trial court. Therefore, *Bainbridge* is not applicable to the case before us.

Here, Spencer filed one notice of appeal from the trial court's order, which levied fines for the six Properties at six separate docket numbers. There was no consolidation of those cases, whether by the trial court *sua sponte* or at the behest of the parties. Without consolidation, this singular appeal is not proper according to *Walker* and its interpretation of the Note to Rule 341(a) of the Pennsylvania Rules of Appellate Procedure. We are bound by the precedent set by the Supreme Court in *Walker* establishing this bright-line rule. However, unlike cases quashing the appeal in its entirety, *see, e.g.*, *Commonwealth v. Casey*, 218 A.3d 429, 431 (Pa. Super. 2019) (failure to file separate petitions was fatal and the petition for permission to appeal was denied); *Commonwealth v. Nichols*, 208 A.3d 1087, 1090 (Pa. Super. 2019) (the appellant's appeal was quashed because appellant did not file separate notices of appeal for each of the trial court's docket numbers), we will not quash the entirety of the appeal. "[T]he Rules of Appellate Procedure are to be liberally construed to effectuate justice. Pa.R.A.P. 105(a), *see also* 1 Pa.C.S.[] § 1928(c)." *Johnson*, 236 A.3d at 1148. Unique to this case, the trial court order appended to the Notice of Appeal identifies it as belonging to Docket No. 704-2019, related to the Deep Hollow Property. Therefore, we conclude Spencer has properly preserved his appeal of that matter. However, because Spencer has not filed a notice

15

of appeal from the other trial court orders for Case Nos. 705-2019 through 709-2019, pursuant to *Walker*, we are constrained to quash those appeals.[11]

### B. Whether the trial court abused its discretion or committed an error of law in imposing the fines.

Having concluded Spencer properly appealed from the trial court's order in Case No. 704-2019, we move to the merits of Spencer's arguments involving the Deep Hollow Property.[12]  Spencer asserts that the trial court abused its discretion because the Township did not offer adequate evidence to support the fine, the trial court committed an error of law when it determined that the Township's Zoning Ordinance does not require a business use for a property to be a "junkyard," and the trial court erred in dismissing the selective enforcement challenge.  We address each of these arguments in turn.

#### 1.  Adequate Evidence

Section 617.2(a) of the MPC provides the following regarding fines associated with violations of any zoning ordinance:

---

[11] During argument, for the first time, Spencer contended that the trial court faxed only one copy of the trial court's Opinion and Order to him and not six.  Therefore, he contended generally that his filing only one appeal from that order should be acceptable.  The Township asserted that Spencer waived any argument based on his alleged receipt of only one order because any argument should have been raised in his brief when ordered by the Court to address the issue.  We agree that this contention, and any legal argument in support thereof, should have been raised in Spencer's brief, as issues not adequately raised by a party in its brief are waived.  *Saad v. Sacred Heart Hosp.*, 700 A.2d 604 (Pa. Cmwlth. 1997).  Moreover, there has been no legal argument made in support of his general contention that receipt of one order here absolves Spencer of filing notices of appeal in all six dockets.  Regardless, even if we had not quashed the five appeals, as we explain *infra*, we would have affirmed the trial court.

[12] "In an appeal from a trial court's decision in a zoning enforcement proceeding, our review is limited to determining whether the trial court committed an abuse of discretion or error of law."  *Loganville Borough v. Godfrey*, 58 A.3d 1149, 1151 n.4 (Pa. Cmwlth. 2012).

> Any person[] . . . who . . . has violated or permitted the violation of the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, upon being found liable therefor in a civil enforcement proceeding commenced by a municipality, pay a judgment of **not more than $500** plus all court costs, including reasonable attorney fees incurred by a municipality as a result thereof.

53 P.S. § 10617.2(a) (emphasis added). When a landowner does not appeal enforcement notices to the zoning hearing board, "the failure to appeal renders the violation notice unassailable." *Township of Penn v. Seymour*, 708 A.2d 861, 864 (Pa. Cmwlth. 1998). If a municipality then files a complaint with the MDJ, the MDJ and, later the trial court, may only address "whether the penalty imposed for the violation was proper," and not the violation itself. *Id*. at 865. Stated another way, when a landowner, such as Spencer in this case, is given notice of violations, the landowner must first challenge the violations before the municipality's zoning hearing board; the landowner cannot challenge the violations in the first instance before the trial court or MDJ. *Johnston v. Upper Macungie Township*, 638 A.2d 408, 411 (Pa. Cmwlth. 1994). In *Johnston*, because the landowner did not appeal the notice of violation to the local zoning hearing board, the trial court and MDJ were barred from considering whether a violation, in fact, occurred, and were limited by Section 617.2(a) of the MPC to determining the amount of a fine based upon the evidence of that violation. *Johnston*, 638 A.2d at 412. We explained a trial court and MDJ should "accept evidence that a landowner violated the ordinance," and then "**may** accept evidence relating to a landowner's assertion that he had a good faith belief that he had not violated a zoning ordinance," as it "relates to the [MDJ or trial court]'s power to impose sanctions." *Id*. (emphasis added).

Spencer argues that the trial court's imposition of the maximum fine was an abuse of discretion as there was a lack of evidence of the violation from the

17

Township.  However, per *Johnston* and the MPC, the Township need only provide "evidence of a landowner's failure to appeal a zoning officer's determination," which the Township provided, through the Zoning Officer's testimony that Spencer did not appeal to the Zoning Hearing Board.  *Johnston*, 638 A.2d at 412.  Once the Township proffered this evidence, the trial court possessed discretion to determine the fines.  *See Loganville Borough v. Godfrey*, 59 A.3d 1149, 1152 (Pa. Cmwlth. 2012).  In *Loganville*, the trial court issued a fine of $0 and explained that, although not determinative, there was "no harm to the [b]orough; [the l]andowner derived no economic benefit from [the] violation; and [the landowner] brought [the] property into compliance with the [z]oning [o]rdinance within the five-day timetable demanded by the [b]orough."  *Id*.  Unlike *Loganville*, there are no such considerations in this case as Spencer has not cooperated with the Township.  Accordingly, we find no abuse of discretion in the trial court's imposition of the fines in light of the evidence brought before it, particularly when the trial court reduced the amount of fines previously imposed by the MDJ.

### 2.  Business Use Requirement

Spencer also asserts that the trial court committed an error of law in determining that a business use is not required for a property to be considered a "junkyard" under the Zoning Ordinance.  The Zoning Ordinance defines "junkyard" as

> [l]and or structures used for the collection, storage, processing and sale of scrap metal, scrapped, abandoned or junked motor vehicles, machinery, equipment, wastepaper, glass, rags, containers and other discarded materials.  It shall not include, however, refuse or garbage kept in a proper container for the purpose of prompt disposal.

Zoning Ordinance § 195-6A.

18

Before the trial court, Spencer argued that the absence of a comma in the term "processing and sale" meant that both processing and sale was required to qualify a property as a junkyard. (R.R. at 148a.) Furthermore, he argued the term "processing and sale" within the definition required the landowner to be "engaged in the business," which he was not. (*Id.* at 147a-48a.) The trial court rejected Spencer's argument that the Zoning Ordinance required a business use, citing the Zoning Ordinance's plain language. (*Id*. at 148a-49a.)

Although Spencer invites the Court to engage in an analysis of the definition of "junkyard," which in his opinion, will show there is no violation of the Zoning Ordinance, such an analysis is unnecessary here. As stated above, because Spencer did not appeal the Notice, he cannot now argue that there is no violation.

Even if we were to undertake such an analysis, we disagree with Spencer's interpretation of the Zoning Ordinance. In reading the language of an ordinance, the goal is to determine the intent of the legislative body that enacted the ordinance. *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 509 (Pa. Cmwlth. 2014). We first look to the plain language of the statute, in which "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." *Id*. (quoting Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a)). If an ordinance is unambiguous, we are to apply it as written. *Id*. at 510. However, if ambiguous, "we must then ascertain the legislative body's intent by statutory analysis, wherein we may consider numerous relevant factors. An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Id*. (internal citation omitted). Moreover, an ordinance "shall be construed, if possible, to give effect to all its provisions so that

19

no provision is 'mere surplusage.'" *Id.* at 509 (citing Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a)). Finally, it is presumed that a municipality did "not intend a result that is absurd, impossible of execution or unreasonable." Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922. Spencer and the Township offer two reasonable interpretations of the Zoning Ordinance. Spencer contends that the Zoning Ordinance requires the collection, storage, processing **and** sale of junked material, because of the use of the conjunction. The Township argues that all four acts are not required because such an interpretation would render parts of the definition superfluous, and had the Township intended to instill a business use requirement, it could have plainly stated as much in the Zoning Ordinance, which it did not. Given these two reasonable interpretations, we agree that the Zoning Ordinance is ambiguous. Therefore, we will use the above outlined principles to discern the Township's intent.

We disagree with Spencer that the word "and" at the beginning of Section 195-6A of the Zoning Ordinance necessitates a business use or inherently connects "processing and sale" together, since there is a lack of a comma. (*See* Spencer's Br. at 18-19.) While the "[c]ourt[s] ha[ve] generally taken 'and' to mean 'and,'" the Supreme Court has explained that this is not required when the result would be "unreasonable, absurd, or incapable of execution." *Gen. Motors, LLC v. Bureau of Pro. & Occupational Affairs, State Bd. of Vehicle Mfr., Dealers, & Salespersons*, 212 A.3d 40, 49 (Pa. 2019); *see also Lewis v. Thornburgh*, 462 A.2d 310, 317 (Pa. Cmwlth. 1983) (interpreting "and" as the disjunctive "or" and reviewing cases doing same). This would be the case here. Reading "and" as a conjunctive in the definition of "junkyard" would lead to an unreasonable interpretation. For example, as pointed out by the Township, the final sentence of the definition provides an exception for

20

refuse or garbage that is kept in a proper container for disposal. (Township's Br. at 16.) Spencer's interpretation would render this exception "superfluous" because the exception would not be needed for a business selling such items. We agree with the Township that this exception contradicts Spencer's argument that a business use is required to violate the Zoning Ordinance. We also note that the definition includes "and" later in the definition, in listing "machinery, equipment, waste paper, glass, rags, containers **and** other discarded materials" as types of items that may comprise a junkyard. Zoning Ordinance § 195-6A (emphasis added). Under Spencer's interpretation, if one of these items was not present, i.e., no waste paper, it would not qualify as a junkyard. We, therefore, conclude this is one of those circumstances where interpreting "and" as a conjunctive leads to an absurd result, and instead we interpret "and" as a disjunctive. *Gen. Motors,* 212 A.3d at 49; *Lewis*, 462 A.2d at 317.

Finally, in looking to the text of Section 195-6A of the Zoning Ordinance, there is no mention of the land being connected to a business directly; instead, a variety of uses are listed for a piece of land to be considered a junkyard. Had the Township intended to require such a business use, it could have provided as much in the Zoning Ordinance, which it did not. We, therefore, find no error in the trial court's interpretation of the Ordinance, and we will not overturn the fine it imposed based on the evidence presented before it.

### 3. Selective Enforcement

Spencer's final argument proposes that the trial court erred in determining there was no selective enforcement in this case. In order to establish selective prosecution, Spencer was required to establish that "others similarly situated were not prosecuted for similar conduct" and that the government's "prosecution was

21

based on impermissible grounds such as race, religion, the exercise of some constitutional right, or any other such arbitrary classification." *Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 (Pa. 1997).

In support of his selective enforcement claim, Spencer cites to the testimony of the Zoning Officer that other individuals, such as Rodibaugh, who were cited but were not required to pay fines. The Zoning Officer testified he cited other individuals for the same violations around "the same time period." (R.R. at 56a.) Those individuals, while they did not pay fines, **complied** with the Zoning Officer's request by making calls to the office, **allowing inspections**, and **removing the junk vehicles**. (*Id*. at 56a.) Even the testimony of Spencer's own witness, Rodibaugh, established that he worked with the Township before and after the notice of violation. Spencer, in contrast, did not work with the Township at any stage of the proceedings to remedy the violations or make a showing that the violations were wrong by appealing to the Zoning Hearing Board. Therefore, Spencer has not shown he is similarly situated to those individuals.

Spencer also relies upon the testimony of the Former Zoning Officer to support his claim. The trial court, though, dismissed the Former Zoning Officer's testimony and determined that it was "not relevant to this inquiry" because the Former Zoning Officer's interpretation of the Zoning Ordinance was incorrect and the refusal to enforce provisions of the Zoning Ordinance does not foreclose a future Zoning Officer from doing so. (Trial Ct. Op. at 4.) As the trial court is the fact finder, we are bound by its findings and credibility determinations. *Ziegler v. City of Reading*, 216 A.3d 1192, 1202 (Pa. Cmwlth. 2019). Additionally, Spencer proffered no evidence to support a finding that Spencer was treated differently from other similarly situated individuals who also did not comply or work with the

22

Township and Zoning Officer. Therefore, we cannot conclude that the trial court erred in determining that there was no selective enforcement by the Township.

## IV. CONCLUSION

Following the Supreme Court's opinion in *Walker*, it is improper for a party to file one notice of appeal from an order which "resolve[d] issues arising on more than one lower court docket." 185 A.3d at 977. This is a bright-line rule, and we are, therefore, constrained to quash five of the six cases Spencer attempted to appeal from the trial court.[13] We do not quash Spencer's appeal on the Deep Hollow Property, Case No. 704-2019, because the Notice of Appeal properly appealed the order related to that matter. On the merits, we conclude the trial court did not abuse its discretion or commit an error of law in its imposition of the fines. The Township proffered evidence that Spencer did not appeal the violation to the Zoning Hearing Board, and thus this fact was binding on the trial court. *Johnston*, 638 A.2d at 412. The record also establishes that Spencer did not cooperate with the Township, while others, similarly cited by the Township, worked with the Zoning Officer. Accordingly, we find no error or abuse of discretion by the trial court and we affirm the trial court's order in regards to the Deep Hollow Property, Case No. 704-2019.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[13] Even if we had not quashed the appeals, we would conclude that the trial court did not commit an error of law or abuse its discretion for the other five Properties for the same reasons discussed with regard to the Deep Hollow Property.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Township of Cranberry              :
                                       :
                                       :
                                       :
            v.                    :     No. 375 C.D. 2020
                                         :
Randy J. Spencer,              :
                  Appellant     :

## **O R D E R**

**NOW**, March 24, 2021, the March 13, 2020 Order of the Court of Common Pleas of Venango County (trial court) entered at trial court docket 704-2019 is hereby **AFFIRMED**. Appellant's appeal of the orders entered at trial court dockets 705-2019, 706-2019, 707-2019, 708-2019, 709-2019 is **QUASHED**.

                                               _____

                                               **RENÉE COHN JUBELIRER,** Judge